## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JINGJING LI,<br>Hongwen Sixli, Siming District<br>Xiamen City, Fujian Province, China, ) ) ) ) | |
|       Plaintiff, ) ) | |
|     v. ) ) | Case No.: |
| UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES<br>U.S. Department of Homeland Security<br>Washington D.C. 20529-2029, and ) ) ) ) ) | Hon. Judge:<br><br>Hon. Magistrate Judge: |
| LEÒN RODRÍGUEZ, in his official capacity as<br>Director, United States Citizenship and<br>Immigration Services<br>U.S. Department of Homeland Security<br>Washington D.C. 20529-2029, and ) ) ) ) ) ) | |
| NICHOLAS COLUCCI, in his official capacity<br>as Chief of the Immigrant Investor Program<br>Office,<br>131 M Street, NE, MS 2235<br>Washington D.C. 20529, ) ) ) ) ) ) | |
|       Defendants. ) | |

## <u>COMPLAINT</u>

Plaintiff JINGJING LI ("Plaintiff"), by and through her undersigned counsel, Rachel T.

McGuckian and Miles & Stockbridge P.C., respectfully submits this Complaint regarding the

denial of Plaintiff's Form I-526 Immigrant Petition by Alien Entrepreneur ("I-526 Petition") by

Defendants UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"),

LEON RODRIGUEZ, and NICHOLAS COLUCCI (collectively, "Defendants"). In support

thereof, Plaintiff alleges and states as follows:

## STATEMENT OF CASE

1.      This case involves an appeal of Defendants' denial of Plaintiff's I-526 Petition. Although Plaintiff demonstrated in her I-526 Petition that she satisfied the requirements to obtain conditional lawful permanent residency through USCIS' EB-5 Immigrant Investor Program ("EB-5 Program"), Defendants denied Plaintiff's I-526 Petition for unlawful reasons.  Plaintiff now asserts that Defendants' denial was arbitrary and capricious, unsupported by evidence on the record, not in accordance with the law, and in violation of Plaintiff's procedural due process rights.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically the Immigration and Nationality Act ("INA"), USCIS' regulations, and the Constitution of the United States. This Court also has jurisdiction under 5 U.S.C. § 500 *et seq.* (Administrative Procedure Act ("APA")) and 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act)).

3.      There is no statutory or regulatory requirement to exhaust administrative remedies in the instant case.   See Darby v. Cisneros, 509 U.S. 137, 146-147 (1993) (the APA "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of [the statute] for courts to require litigants to exhaust optional appeals as well.").  This present action does not challenge any discretionary act by Defendants.

4.      Cost and Attorney's Fees will be sought pursuant to the Equal Access to Justice Act.  5 U.S.C. § 504 and 28 U.S.C. § 2412(d), *et seq.*

5.      Venue properly lies in the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(e), as this is an action against officers of the United States acting in their official capacity, brought in the district where Defendants reside.

## PARTIES

6.      Plaintiff is a citizen and resident of the People's Republic of China who filed an I-526 Petition with USCIS on October 20, 2014.  Plaintiff's I-526 Petition was improperly and unlawfully denied by USCIS on March 10, 2016.

7.      Defendant USCIS is the agency responsible for adjudicating the Form I-526 relating to Plaintiff's pursuit of conditional and unconditional permanent residence in the fifth employment-based preference under INA § 203(b)(5) [8 U.S.C. § 1153(b)(5)].  USCIS has the ultimate responsibility for determining the eligibility of alien entrepreneurs who have submitted an I-526 Petition, such as Plaintiff.

8.      Defendant Leòn Rodrìguez is Director of USCIS and has ultimate authority over the operations of USCIS, including the Immigrant Investor Program Office.   In that capacity, he is responsible for the administration of immigration and citizenship benefits, including the adjudication of Plaintiff's Form I-526.  Defendant Rodriguez is sued in his official capacity.

9.      Defendant Nicholas Colucci is the Chief of the Immigrant Investor Program Office ("IPO") within USCIS.  In that capacity, he is responsible for and oversees all activities regarding the EB-5 Program, including the adjudication of Plaintiff's Form I-526.  Defendant Colucci is sued in his official capacity.

## LEGAL BACKGROUND

### The Immigrant Investor Program

10.      In 1990, the United States Congress enacted Section 203(b)(5) of the INA [8 U.S.C. § 1153(b)(5)].  This provision created a new preference allocation of visas ("EB-5

Visas") for qualified immigrant investors seeking to enter the United States for the purpose of investing in a "new commercial enterprise" ("NCE"), as defined at 8 C.F.R. § 204.6(e).

11.     To qualify for an EB-5 Visa, an immigrant must invest or be actively in the process of investing a minimum of $1,000,000.00 in a new commercial enterprise, or at least $500,000.00 where the investment is being made in a "targeted employment area" ("TEA"), as defined at 8 U.S.C. § 1153(b)(5)(B)(ii).

12.     To qualify for an EB-5 Visa, an immigrant investor must demonstrate that his or her investment in the NCE created full-time time employment for no fewer than 10 United States citizens or aliens authorized to be employed in the United States.  8 U.S.C. § 1153(b)(5)(A)(ii).

13.     In 1993, the United States Congress created the "Immigrant Investor Pilot Program," which encouraged potential immigrants to invest in an NCE through a USCIS-designated "regional center;" entities organized "for the promotion of economic growth, including increased export sales, improved regional productivity, job creation, and increased domestic capital investment."   Section 610, Department of Justice and Related Agencies Appropriations Act, 1993, Pub .L. 102-395, 106 Stat. 1828, 1874.

14.     The Immigrant Investor Program allows multiple immigrant investors to pool their respective capital investments in an NCE, and for the NCE to invest in a "job creating entity" for creating the jobs upon which EB-5 eligibility is based.  The full amount of capital from each immigrant investor must be first invested in the NCE and then made available to the "job creating entity".  See Matter of Izummi, 22 I&N Dec. 169, 179 (Assoc. Comm'r 1998).

15.     USCIS' final rules for implementing the provisions of 8 U.S.C. § 1153(b)(5) and the Immigrant Investor Program, specifically in 8 C.F.R §§ 206.4 and 216.6, set forth USCIS' interpretation of the language in 8 U.S.C. §1153(b)(5).

16.     USCIS determined that "reasonable methodologies" used to estimate and confirm job creation include multiplier tables, feasibility studies, and "other economically or statistically valid forecasting devices which indicate the likelihood that the business will result in increased employment.  See 8 C.F.R. § 204.6(m)(3)(v).

17.     A May 30, 2013 USCIS Policy Memorandum regarding EB-5 Adjudications Policy ("2013 Memo") states that "[a]n investor's money may be held in escrow until the investor has obtained conditional lawful permanent resident status if the immediate and irrevocable release of the escrowed funds is contingent only upon approval of the investor's Form I-526 and subsequent visa issuance and admission to the United States as a conditional permanent resident."  **Exhibit 1** at 6.

18.     The evidentiary standard by which USCIS requires foreign nationals to demonstrate eligibility in an I-526 Petition is one of "preponderance of evidence," which means that the matter asserted is more likely than not to be true.  USCIS has reaffirmed this evidentiary standard in the 2013 Memo.  **Exhibit 1** at 2.

19.     The "by the preponderance of the evidence" standard can be further explained as "more likely than not"; even if an adjudicator has some doubt as to the truth, if the petitioner or applicant submits relevant, probative, and credible evidence that leads to the conclusion that the claim is "more likely than not" or "probably true," the petitioner or applicant has satisfied the standard of proof.  **Exhibit 1** at 2.

20.     The 2013 Memo specifically notes that it "is applicable to, and is binding on, all USCIS employees."  **Exhibit 1** at 1.

21.     8 C.F.R. § 204.6(j)(4)(i)(B) requires an I-526 Petition to include a comprehensive business plan showing that, due to the nature and projected size of the NCE, the *need* for not fewer than 10 qualifying employees will result.

### The EB-5 Petition Process

22.     To obtain conditional and unconditional permanent residence in the fifth employment-based preference under INA § 203(b)(5), a foreign national must first file a Form I-526 Immigrant Petition by Alien Entrepreneur with USCIS.

23.     USCIS adjudicates each I-526 Petition pursuant to the regulatory criteria set forth in 8 C.F.R. § 204.6.

24.     The foreign national (and his or her derivative beneficiaries included in the I-526 Petition, if any) can then obtain conditional lawful permanent residency status through immigrant visa processing at a U.S. Department of State consular post or through adjustment of status in the U.S. filed with USCIS.

25.     Upon entering the United States or completion of the adjustment of status process, the foreign national (and his or her derivative beneficiaries included in the I-526 Petition, if any) is admitted to the United States as a conditional lawful permanent resident.

### FACTUAL BACKGROUND

### Plaintiff's EB-5 Investment Project

26.     Plaintiff made an investment of $500,000.00 USD into First American Assisted Living EB-5 Fund, LLC ("FAALEF"), an Illinois limited liability company established as a "new commercial enterprise," as defined by 8 U.S.C. § 1153(b)(5) and 8 C.F.R. § 204.6(e).

27.     The purpose of FAALEF is to pool investments from potential EB-5 investors to provide an investment loan to First American Assisted Living, Inc. ("FAAL"), a Florida

corporation established as a "job creating entity" to develop, construct, and operate an assisted living and memory care facility in the City of Wildwood, Florida (the "Facility").

28.     Pursuant to an Investor Holdings Account Agreement signed by Plaintiff and FAALEF, Plaintiff's investment of $500,000.00 is maintained in escrow in an Investor Holding Account until USCIS approves Plaintiff's Form I-526, at which time the full $500,000.00 is disbursed to FAALEF in order for FAALEF to lend the full $500,000.00 to FAAL to construct the Facility.

29.     To date, Plaintiff's EB-5 investment of $500,000.00 remains in the Investor Holdings Account.

### Plaintiff's I-526 Petition

30.     Plaintiff filed her I-526 Petition with USCIS on October 20, 2014.

31.     Plaintiff's I-526 Petition contained evidence demonstrating Plaintiff's eligibility for conditional permanent residence in the fifth employment-based preference under INA § 203(b)(5) pursuant to 8 C.F.R. § 204.6.

32.     Plaintiff's I-526 Petition contained evidence that Plaintiff placed the required amount of $500,000.00 capital at risk for the purpose of generating a return on the capital in accordance with 8 C.F.R. § 204.5(j)(2).

33.     Plaintiff's I-526 Petition contained evidence that Plaintiff's investment in FAALEF, and FAALEF's subsequent loan of Plaintiff's investment to FAAL, will create the need for at least 10 full-time equivalent positions for qualifying employees in accordance with 8 C.F.R. § 204.5(j)(4).

**Notice of Intent to Deny**

34.     On January 25, 2016, USCIS issued a notice of intent to deny ("NOID") Plaintiff's I-526 Petition, which afforded Plaintiff 33 days in which to respond.

35.     The NOID requested that Plaintiff provide evidence demonstrating that FAAL purchased an adjacent real estate lot to be used as a retention pond/drainage area.

36.     The NOID stated that the business plan submitted by Plaintiff for FAAL did not provide a list of required licenses or permits obtained or to be obtained by FAALEF and requested a list of all licenses or permits required for the development and construction of the project.

37.     The NOID stated that, in the economic impact analysis submitted by Plaintiff to demonstrate projected job creation, USCIS will not include jobs created from financing and project fees, and requests that Plaintiff submit an updated business plan with an economic impact analysis to correctly reflect the total number of EB-5 investors and number of jobs that will be created by FAAL.

38.     The NOID finishes with a two-page section titled "Evidence that the Invested Capital was Obtained Through Lawful Means", requesting evidence regarding the lawful source of funds in relation to two alternate individuals that does not relate to Plaintiff and appears to be copy-and-pasted from an alternate EB-5 investor.

**Response to Notice of Intent to Deny**

39.     Plaintiff provided a comprehensive and timely response to the NOID on February 26, 2016 ("NOID Response").

40.     In her NOID Response, Plaintiff provided evidence that FAAL had purchased the adjacent real estate to be used as a retention pond/drainage area.

41.     In her NOID Response, Plaintiff provided a list of all licenses or permits required for the development and construction of the project, along with supporting documentation and an updated business plan.

42.     Prior to submitting her NOID Response, Plaintiff and FAALEF became aware that USCIS had issued several I-526 denials in relation to other investors participating in FAALEF and FAAL.

43.     In these other denials, USCIS incorrectly read the economic impact analysis, and used that incorrect reading as the basis to conclude that FAAL would fall short of the total requested job creation by 4.7 jobs among 22 EB-5 investors.

44.     In her NOID Response, Plaintiff provided an affidavit from the Accounting Manager of the Manager of FAALEF dated February 26, 2016, confirming that the current number of EB-5 investors participating in the NCE and JCE had previously been reduced to 22 investors, and as of the NOID Response, stood at 19 investors with no plans by FAALEF to add additional EB-5 investors.

45.     In her NOID Response, Plaintiff provided evidence regarding potential non-EB-5 financing for FAAL's construction of the Facility, and also clarified that the release of Plaintiff's $500,000 held in escrow in the Investor Holding Account to FAALEF was contingent only upon USCIS approval of Plaintiff's I-526, regardless of the extent of any non-EB-5 financing obtained by FAAL.

46.     In her NOID Response, Plaintiff stated that many EB-5 projects have contingent or conditional private financing aside from the EB-5 financing, and if USCIS has approved other EB-5 projects with contingent or conditional private financing, then USCIS has made a

determination that the EB-5 financing in those respective EB-5 projects will be made available to the job creating entity.

47.     In her NOID Response, Plaintiff explained how USCIS had misread the total number of jobs that will be created by FAAL as set forth in the economic impact analysis submitted by other EB-5 investors participating in FAALEF and FAAL in those investors' respective Form I-526 denials, so that USCIS would not make the same mistake or simply copy-and-paste the same denial language in relation to Plaintiff's I-526.

48.     In her NOID Response, Plaintiff explained, in reference to the same denials as in the preceding paragraph, how USCIS had misread the jobs that Plaintiff's claims would be created by the "ineligible" expenditures, so that USCIS would not make the same mistake or simply copy-and-paste the same denial language in relation to Plaintiff's I-526.

49.     In her NOID Response, Plaintiff provided evidence that the expenditures that USCIS determined were "ineligible" expenditures for job creation, did in fact create jobs and should be included as eligible job creation for EB-5 purposes.

50.     In her NOID Response, Plaintiff explained that the two-page section titled "Evidence that the Invested Capital was Obtained Through Lawful Means" did not in fact apply to Plaintiff, and that Plaintiff's prior submission to USCIS did not reference other EB-5 investors.

### USCIS' Denial of Plaintiff's I-526 Petition

51.     On March 10, 2016, USCIS denied Plaintiff's I-526 Petition (the "Denial"). **Exhibit 2**.

52.     The Denial begins by stating that the Form I-526 "filed by Mr. Quan Zhou" has been denied". Id. This appears to be a copy-and-paste citation related to another EB-5 investor.

53.     The Denial has two main bases:  "Capital at Risk - Qualifying Contribution of Capital" and "Job Creation – Economic Methodology."  Id.

Capital at Risk - Qualifying Contribution of Capital

54.     The Denial states that the existing record contains an affidavit from the Accounting Manager of the Manager of FAALEF dated September 9, 2015 and an Indicative Term Sheet dated May 10, 2015.  Id. at 6.

55.     Plaintiff's NOID Response did not actually include either of these two documents.

56.     Plaintiff's NOID Response included an affidavit from the Accounting Manager of the Manager of FAALEF dated February 26, 2016 and financing term sheet dated October 30, 2015 from an entity other than that referenced by USCIS in the Denial.

57.     The Denial also states that, because the Indicative Term Sheet did not specify who the borrower would be and is contingent and "not a loan agreement", and as FAALEF has not provided other evidence that it had obtained "sufficient financing for the project, it is unclear whether [FAALEF] actually has any present commitment to release the funds to [FAAL]." **Exhibit 2** at 6.

58.     Even had the Denial been accurate regarding the exhibits in the record for Plaintiff's I-526, which it was not, Plaintiff's NOID Response notes that there is no triggering clause, or any other language in the documents relating to Plaintiff's investment that would keep Plaintiff's $500,000.00 from being immediately disbursed from the Investor Holding Account to FAALEF, for the express purpose of being immediately loaned to FAAL.

59.     Plaintiff's NOID Response notes that Petitioner's $500,000.00 is committed to FAALEF, which will lend these funds to FAAL, in their entirety, upon approval of Petitioner's I-526 by USCIS and without regard to the status of the private financing.

60.    The Denial incorrectly takes the position that the status of the non-EB-5 financing for FAAL somehow was linked to the commitment of Plaintiff's $500,000.00, which is entirely inaccurate.  **Exhibit 2** at 6-7.

61.    Plaintiff's full $500,000.00 was at all times committed to FAALEF to be loaned to FAAL and was "at risk" in accord with 8 C.F.R. § 204.6(j).

62.    Defendants' assertion that Plaintiff's funds are not committed, or at risk, runs contrary to the evidence in the record.

<u>Job Creation – Economic Methodology</u>

63.    Plaintiff included an updated economic impact analysis ("EIA") in her NOID Response.  **Exhibit 3**.

64.    The EIA analysis, without supporting appendices, was seven pages in length and contained a "Summary of Results".  <u>Id.</u>

65.    As noted in Plaintiff's NOID Response, the EIA projects a total number of jobs created by FAAL to be 256 by year 3, with 115 jobs stemming from construction and 141 jobs stemming from facility operations.  <u>Id.</u> at 7.

66.    As noted in Plaintiff's NOID Response, the EIA contains separate explanations and tables for the jobs projected to be created from construction and the jobs projected to be created from facility operations.  <u>Id.</u> at 5 and 6.

67.    As noted in Plaintiff's NOID Response, the EIA (and Plaintiff) only asserts that there will be 115 jobs created by construction, with these jobs stemming from projections of indirect and inducted jobs.  <u>Id.</u> at 5.

68.    Table 1 of the EIA, titled "Calculation of Employment Impacts from Construction Expenditures" has a bold and shaded column for "Indirect & Induced Job-Years" which states

that 115 jobs are projected to be created, and is cross-listed in bold and shaded under "Total Indirect and Induced Jobs".  Id.

69.     Table 1 also notes the Total Job-Years that would be created from the construction of the Facility would be 236, if Direct Job-Years were included, which the EAI does not seek to do anywhere in its text.  Id.

70.     The Denial states that Plaintiff "claims [FAAL] will create 236 jobs."  **Exhibit 2** at 8.

71.     At no time in Plaintiff's NOID Response or in the EIA did Plaintiff claim that FAAL will create 236 jobs.

72.     The total jobs projected to be created by the EIA is 256 total jobs, as explained carefully and with the use of bold text by Plaintiff in her NOID Response.

73.     USCIS incorrectly interpreted or misread the EIA to conclude that 236 jobs would be created, instead of 256 jobs, and after discounting the jobs created by "ineligible" expenditures, subtracted 18.7 jobs to conclude that FAAL would create 217.30 jobs.

74.     As USCIS believed that FAALEF had 22 EB-5 investors, based upon its incorrect statement that Plaintiff's NOID Response contained an affidavit dated September 9, 2015, instead of the affidavit actually submitted in Plaintiff's NOID Response dated February 26, 2016, Plaintiff would need to show that FAAL would create 220 jobs to qualify for EB-5 purposes.

75.     Based upon these multiple mistakes, the Denial stated that the EIA only demonstrated projected job creation of 217.30 when 220 would be needed.  **Exhibit 2** at 8.

76.     Had USCIS correctly used the accurate number of 256 jobs created, the reduction of 18.7 jobs would have left 237.3 jobs to be created, and the job creation would be more than sufficient for approval of Plaintiff's Form I-526.

77.     The Denial states that the EIA includes three categories of "ineligible" expenditures related to financing and fees that may not count towards FAAL's job creation, and states that in the EIA these three job categories represent 8.3 jobs, 4.1 jobs, and 6.3 jobs, for a total of 18.7 jobs that USCIS believes must be excluded.  **Exhibit 2** at 8.

78.     In the EIA submitted in Plaintiff's Response, the actual amount of jobs claimed in the EIA and by Plaintiff for these three "ineligible" categories is actually 4.1, 1.6, and 2.5 job, for a total of 8.2 jobs that would be excluded using USCIS' rationale.  **Exhibit 3** at 5.

79.     These figures are also included in Table 1 of the EIA, and the actual numbers claimed by the EIA and Plaintiff for inclusion are in the bold and shaded column, that corresponds with the bold and shaded tabulation at the bottom.  Id.

80.     In her NOID Response, Plaintiff carefully explained the errors that USCIS had made in relation to these "ineligible" expenditures and other I-526 denials issued in relation to FAALEF and FAAF, often using bold text.

81.     The Denial claims that the EIA only demonstrated projected job creation of 217.30 when 220 would be needed, with this 217.30 number including USCIS' exclusion of 18.7 jobs for "ineligible" expenditures, instead of the actual 8.2 jobs that the EIA claims will be created from the "ineligible" expenditures.  **Exhibit 2** at 8; **Exhibit 3** at 5.

82.     Had USCIS actually used either the correct number of total jobs of 256, instead of the incorrect 236, or discounted 8.2 jobs instead of the incorrect 18.7, USCIS would have

concluded that the EIA and Plaintiff had demonstrated sufficient projected job creation using USCIS' own rationale and analysis.

83.     Had USCIS actually used the correct number of 19 EB-5 investors in FAALEF, and thus 190 required jobs, as set forth in the affidavit submitted by Plaintiff in her NOID Response, instead of referencing an affidavit that was not part of Plaintiff's I-526 record, USCIS would have concluded that the EIA and Plaintiff had demonstrated sufficient projected job creation using USCIS' own rationale and analysis.

84.     Plaintiff need only to have demonstrated her eligibility for approval of her Form I-526 by a preponderance of the evidence, or, in other words, more likely than not or at least 50.01%.

**Email to USCIS to point out clear errors**

85.     On March 10, 2016, Plaintiff's counsel sent an email to USCIS, through its USCIS Immigrant Investor Program email address, specifically noting that the denial of Plaintiff's I-526 referred to exhibits that were not part of the record for Plaintiff's I-526 and pointing out the blatant errors made by USCIS in reading the economic impact analysis.

86.     The March 10, 2016 email also noted that, although Plaintiff's NOID Response differed in both certain exhibits and the explanatory language of the supporting cover letter, the denial that USCIS issued to Plaintiff was an entire copy-and-paste of other denials.

87.     On March 15, 2016, Plaintiff's counsel received an emailed response from officer MS0016 of USCIS which stated: "Please be advised that a supervisor reviewed the decision regarding WAC1590021064 and it will stand.  If you wish to file a Motion to Reopen, please follow the instructions for Form I-290B, Notice of Appeal of Motion."

88.     The Denial language is a copy-and-paste of other decisions and includes references to exhibits not in Plaintiff's record.

89.     The Denial, as written, is based upon multiple errors by USCIS made in relation to other decisions apart from Plaintiff's I-526, and indicates that Plaintiff's I-526 should have been approved.

90.     Plaintiff's NOID Response specifically addressed the prior errors by USCIS, and Plaintiff again pointed out these errors in the March 10, 2016 email to USCIS.

91.     USCIS either failed to review Plaintiff's submission or purposefully chose to disregard her submission and the governing regulations and policy.

92.     The current filing fee for a Form I-290B is $630.00 and as per the USCIS Administrative Appeal Office, the average processing time for review of a Form I-526 is "6 months or less", although in reality the processing time often exceeds 6 months and even one year.

93.     There is no mandatory administrative review, appeal, or motion to reopen required of a denied Form I-526, such as that of Plaintiff.

## CLAIMS FOR RELIEF

### Count I:  Arbitrary and Capricious Determination that
### Plaintiff's Capital Investment was not At Risk

94.     Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count I.

95.     Defendants' practices, policies, rules, criteria, interpretations, and conduct in regard to Plaintiff's I-526 Petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and was "agency action" in violation of the APA.  5 U.S.C. § 706(2)(A).

96.     Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously determined that Plaintiff's funds were not at risk and committed to FAAL because of the status of non-EB-5 financing.

97.     Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously referenced evidence not part of the record for Plaintiff's I-526 in determining that Plaintiff's funds were not at risk and committed to FAAL.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

    a.    An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

    b.    An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

    c.    An order granting such other and further relief as this Court deem fair and just.

### Count II:  Arbitrary and Capricious Determination that
### Plaintiff Must Demonstrate Non-EB-5 Financing be Final and not Contingent

98.     Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count II.

99.     Defendants' practices, policies, rules, criteria, interpretations, and conduct in regard to Plaintiff's I-526 Petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and was "agency action" in violation of the APA.  5 U.S.C. § 706(2)(A).

100.     Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously determined that Plaintiff must demonstrate that the non-EB-5 financing by the JCE must be final, or not-contingent or not-conditional.

101.     USCIS routinely approves other Form I-526 petitions with conditional or contingent non-EB-5 financing that are not affiliated with FAALEF and FAAL, and has treated Plaintiff's I-526 Petition disparately from said Form I-526 petitions.

102.     Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously treated Plaintiff's I-526 Petition differently from other Form I-526 petitions not affiliated with FAALEF and FAAL.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

   d.     An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

   e.     An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

   f.     An order granting such other and further relief as this Court deem fair and just.

## Count III:  Arbitrary and Capricious Determination that FAAL will not create fewer than Ten (10) Full-Time Positions for Qualifying Employees

103.     Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count III.

104.     Defendants' practices, policies, rules, criteria, interpretations, and conduct in regard to Plaintiff's I-526 Petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and was "agency action" in violation of the APA.  5 U.S.C. § 706(2)(A).

105.     Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously determined that FAAL will create not fewer than 10 full-time positions for qualifying employees in denying Plaintiff's Form I-526.

106.     Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously misread the EIA submitted by Plaintiff and ignored her

written arguments to determine that FAAL will create not fewer than 10 full-time positions for qualifying employees in denying Plaintiff's Form.

107.    Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously referenced documents not part of the record for Plaintiff's I-526 in determining that FAAL will create not fewer than 10 full-time positions for qualifying employees in denying Plaintiff's Form.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

   a.    An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

   b.    An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

   c.    An order granting such other and further relief as this Court deems fair and just.

**Count IV:  Violation of Due Process by failing to consider all evidence submitted in Plaintiff's I-526 Petition and NOID Response**

108.    Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count IV.

109.    Plaintiff has a significant, fundamental interest to procedural due process in the adjudication of her I-526 Petition.

110.    Defendants' failure to consider all evidence presented in her I-526 Petition and response to the NOID in reaching their factual and legal conclusions violates the Due Process Clause of the Fifth Amendment.

111.    Defendants' reliance on documents not included in the record for Plaintiff's I-526 in reaching their factual and legal conclusions violates the Due Process Clause of the Fifth Amendment.

112.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' violation of the Due Process Clause of the Fifth Amendment.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

     a.    An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

     b.    An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

     c.    An order granting such other and further relief as this Court deems fair and just.


**Count V:   Arbitrary and Capricious Action by adjudicating Plaintiff's I-526 Petition above and beyond the correct "By a Preponderance of Evidence" standard**

113.     Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count V.

114.     Defendants' practices, policies, rules, criteria, interpretations, and conduct in regard to Plaintiff's I-526 Petition was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and was "agency action" in violation of the APA.  5 U.S.C. § 706(2)(A).

115.     Defendants' denial of Plaintiff's I-526 Petition violated the APA when Defendants arbitrarily and capriciously applied an improperly high standard of proof to Plaintiff's I-526 Petition above and beyond "by a preponderance of evidence."

116.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' arbitrary and capricious actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

   a.   An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

   b.   An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

   c.   An order granting such other and further relief as this Court deems fair and just.

**Count VI:  Exceeding Statutory and Regulatory Authority by adjudicating Plaintiff's I-526 Petition above and beyond the correct "By a Preponderance of Evidence" standard**

117.   Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count VI.

118.   Defendants' denial of Plaintiff's I-526 Petition was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" in violation of 5 U.S.C. § 706(2)(C) by application of an improperly high standard of proof to Plaintiff's I-526 Petition above and beyond "by a preponderance of evidence."

119.   Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by Defendants' actions.  As a result, Defendants' actions must be held unlawful and set aside.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

   a.   An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

   b.   An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

   c.   An order granting such other and further relief as this Court deems fair and just.

**Count VII:   Violation of Due Process by Adjudicating Plaintiff's I-829 Petition Above and Beyond the Correct "By a Preponderance of Evidence" Standard**

120.    Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count VII.

121.    Plaintiff has a significant, fundamental interest to procedural due process in the adjudication of her I-526 Petition.

122.    Defendants' adjudication of Plaintiff's I-526 Petition violated the Due Process Clause of the Fifth Amendment because Defendants improperly used a heightened evidentiary standard above and beyond "preponderance of evidence"

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

   a.    An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

   b.    An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

   c.    An order granting such other and further relief as this Court seems fair and just.

**Count VIII:  5 U.S.C. § 706(2)(E)**

123.    Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count VIII.

124.    Defendants violated 5 U.S.C. § 706(2)(E), as their denial of Plaintiff's I-526 Petition was not supported by substantial evidence.  See Universal Camera Corp v. NLRB, 340 U.S. 474 (1951).

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

   a.    An order directing Defendants and their agents to reverse the denial of Plaintiff's I-526 Petition and promptly approve Plaintiff's I-526 Petition;

b.     An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

c.     An order granting such other and further relief as this Court deems fair and just.

## Count IX:  Declaratory Judgment Act

125.    Plaintiff incorporates paragraphs 1 through 93 as if fully stated in this Count IX.

126.    Plaintiff seeks a declaration that Defendants' acts described *supra* are unlawful; *ultra vires*; and constitute violations of legal duties that Defendants owe Plaintiff under the INA and APA and Due Process Clause of the Fifth Amendment.

## ATTORNEY'S FEES

127.    The Equal Access to Justice Act, 28 U.S.C. § 2412, provides for the award of costs and reasonable attorney's fees to a prevailing party in a proceeding for judicial review of an agency action brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.  See 28 U.S.C. §§ 2412(a) and (d)(1).

128.    Plaintiff explained the errors in the Denial to USCIS immediately upon issuance of the Denial, and USCIS chose not to alter the Denial although it had the ability and authority to do so.

129.    As a result of Defendants' unlawful actions, Plaintiff was required to hire counsel and pay counsel reasonable fees and expenses.

130.    Plaintiff is entitled to recover legal fees and all costs and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412, and the APA, 5 U.S.C. § 504.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment on her behalf and issue the following:

a.      An order awarding Plaintiff reasonable attorney's fees and cost of court pursuant to the Equal Access to Justice Act; and

b.      An order granting such other and further relief as this Court seems fair and just.


**Dated: May 19, 2016**                         /s/_____
                                                Rachel T. McGuckian
                                                Miles & Stockbridge P.C.
                                                11 N. Washington Street
                                                Suite 700
                                                Rockville, Maryland  20850
                                                Phone: (301) 762-1600
                                                Fax: (301) 762-0363
                                                Email: rmcguckian@milesstockbridge.com

                                                John Floss *(Pro Hac Vice Motion Pending)*
                                                Kameli Law Group, LLC
                                                1319 S State Street
                                                Suite C2
                                                Chicago, Illinois  60605